IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| KAREEM L. TUCKER, | ) | CASE NO. 1:19-CV-00929-SO |
| | ) | |
| Plaintiff, | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| | ) | JENNIFER DOWDELL ARMSTRONG |
| WARDEN DOUGLAS FENDER, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant, | ) | |

## I.      INTRODUCTION

Petitioner Kareem L. Tucker, an Ohio prisoner serving a 41-year consecutive prison term for kidnapping, drug trafficking, and possession of drugs, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (ECF Doc. 1). Tucker asserts three grounds for relief. (ECF Doc. 1, Page ID #7-21). This matter was referred to me under Local Rule 72.2 to prepare a report and recommendation on Tucker's petition and other case-dispositive motions.[1] Because Tucker's claims are time-barred under AEDPA's one-year statute of limitations, I recommend that the court DENY Tucker's petition. I further recommend that the court DENY Tucker's petition because his claims are barred by AEDPA's statute of limitations, procedurally defaulted, and are otherwise meritless.

---

[1] This case was transferred to the undersigned from Magistrate Judge William H. Baughman, Jr. upon his retirement.

## II.    RELEVANT FACTUAL BACKGROUND

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts "shall be presumed to be correct." 28 U.S.C. § 2254(e)(1); *see also Spagnola v. Horton*, No. 17-1462, 2017 WL 8948745, *2 (6th Cir. Oct. 30, 2017).

The Ohio Court of Appeals for the Ninth District set forth the following facts on Tucker's first direct appeal:

> **{¶2}** In the fall of 2011, a confidential informant working for the Lorain Police Department purchased crack cocaine in a studio apartment on Oberlin Road on three occasions. After the controlled buys were completed, police executed a search warrant of the residence, where they found three guns, a cache of money and crack cocaine, and household items used to deal crack cocaine. Mr. Tucker had been identified by the confidential informant and by the audio recording of the controlled buys. He was charged with four counts of trafficking in drugs in violation of R.C. 2925.03(A)(2); possession of drugs in violation of R.C. 2925.11(A); two counts of having weapons under disability in violation of R.C. 2923.13(A)(2); possessing criminal tools in violation of R.C. 2923.24(A); and use or possession of drug paraphernalia in violation of R.C. 2925.14(C)(1). Two firearm specifications were dismissed during the course of the proceedings.

> **{¶3}** Mr. Tucker filed numerous documents on his own behalf maintaining that he was not subject to the jurisdiction of the Court and asserting his status as a sovereign citizen of "Moorish Native American" heritage. Mr. Tucker continued to make these assertions in court during pretrial appearances. He requested – then asked the court to remove – appointed counsel. Ultimately, the Court permitted him to represent himself when the case proceeded to a jury trial. The jury found him guilty of all of the charges against him, and the trial court sentenced him to a total prison term of thirteen years and four months, with the prison sentence on all charges running consecutively to each other and to the charges in another case. Mr. Tucker appealed. His five assignments of error are rearranged for purposes of resolution.

*State v. Tucker*, 2016-Ohio-1353, 62 N.E.3d 903, ¶¶ 2-3.

## III.    RELEVANT STATE PROCEDURAL HISTORY

### A.  Trial Court Proceedings

#### 1. Indictment

On February 2, 2012, a Lorain County, Ohio grand jury issued an indictment charging Tucker as follows:

| Count | Charge | Ohio Rev. Code | Offense Date |
|-------|--------|----------------|--------------|
| 1 | Trafficking in Drugs – F1 | 29.25.03(A)(2) | 9/27/11 |
| 2 | Possession of Drugs – F1 | 2925.11(A) | 9/27/11 |
| 3 | Having Weapons While Under Disability – F3 | 2923.13(A)(2) | 9/27/11 |
| 4 | Having Weapons While Under Disability – F3 | 2923.13(A)(3) | 9/27/11 |
| 5 | Trafficking in Drugs – F4 | 2925.03(A)(1) | 9/22/11 |
| 6 | Possessing Criminal Tools – F5 | 2923.24(A) | 9/27/11 |
| 7 | Trafficking in Drugs – F5 | 2925.03(A)(1) | 9/21/11 |
| 8 | Trafficking in Drugs – F5 | 2925.03(A)(1) | 9/26/11 |
| 9 | Drug Paraphernalia Offenses – M4 | 2925.14(C)(1) | 9/27/11 |

(ECF Doc. 14-1, PageID#157-60).

### 2. Pretrial Proceedings

The trial court appointed legal counsel to assist Tucker in the criminal proceedings. (ECF Doc. 14-1, PageID#161). When Tucker later requested different legal representation, the trial court appointed Tucker new legal counsel. (ECF Doc. 14-1, PageID#162). Yet before his trial, Tucker indicated that he wished to proceed pro se. (ECF Doc. 14-1, PageID#163). By journal entry filed on November 29, 2019, the trial judge indicated that the trial court offered to appoint legal counsel to assist him, which Tucker refused. (ECF Doc. 14-1, PageID#163). The trial court engaged in a colloquy with Tucker to ensure that his decision to waive counsel was made knowingly, intelligently, and voluntarily. (ECF Doc. 14-1, PageID#163; ECF Doc. 14-2, PageID#612-622). The judge asked Tucker questions regarding his understanding of the charges he faced in trial and informed him of the risk of proceeding pro se. (ECF Doc. 14-1, PageID#615-16). When asked again whether he wanted to proceed pro se, Tucker indicated that he did not desire to have his appointed counsel represent him. (ECF Doc. 14-1, PageID#622). The court offered to have the attorney present to give Tucker advice and assist him in his own representation, but Tucker refused.

3

(ECF Doc. 14-1, PageID#622). The trial court subsequently granted Tucker's request to represent himself. (ECF Doc. 14-1, PageID#163).

### 3. Trial and Sentencing

The case proceeded to jury trial on November 27, 2012 with Tucker appearing pro se. (ECF Doc. 14-1, Page ID#163). On November 29, 2012, the jury found Tucker guilty on all counts. (ECF Doc. 14-1, Page ID#166-67). The trial court informed Tucker of his 30-day appeal period and advised him of the opportunity to have appellate counsel appointed by the court, which Tucker refused. (ECF Doc. 14-1, PageID#167). On the same day, the trial court imposed the following prison terms: Count 1 – 8 years; Count 2 – merged with Count 1; Count 3 – 24 months; Count 4 – merged with Count Three; Count 5 – 14 months; Count 6 – 10 months; Count 7 – 8 months; Count 8 – 8 months; and Count 9 – merged with Count 6. (ECF Doc. 14-1, PageID#179). The aggregate sentence was 13 years and 4 months. (*See* ECF Doc. 14-1, PageID#179). The trial court further ordered Tucker to serve his prison sentences consecutively to prison sentences that he received in Lorain County Common Pleas Court Case No. 10CR081026. (ECF Doc. 14-1, Page ID#179). Together with his kidnapping case, Tucker's consecutive sentence was 38 years.

### B. Direct Appeal

Tucker, through appellate counsel, timely filed a notice of appeal in the Ohio Courts of Appeals for the Ninth District on January 10, 2013. (ECF Doc. 14-1, PageID#188). The state appellate court later granted Tucker leave to appeal the trial court's November 20, 2012 sentencing entry and December 11, 2012 amended sentencing entry[2] in the Ohio Court of Appeals for the Ninth District. (ECF Doc. 14-1, PageID#189).

---

[2] On December 11, 2012, the trial court journalized an amended sentencing entry that deleted erroneous language that Tucker was present with counsel. (ECF Doc. 14-1, PageID#182-85).

Tucker's appellate counsel filed an *Anders* brief that alleged that appellate counsel was unable to identify any appealable issues or any possible appealable issues for Tucker to pursue pro se. (ECF Doc. 14-1, PageID#190). The Ohio Court of Appeals determined that appellate counsel's brief did not comply with *Anders*, struck the brief from the record, and ordered Tucker's appellate counsel to file a proper *Anders* brief or merits brief. (ECF Doc. 14-1, PageID#206).

Tucker's appellate counsel filed a motion to withdraw from representation (ECF Doc 14-1, PageID#207) and another *Anders* brief that identified the following possible appealable issues:

> 1. Appellant's conviction is against the sufficiency of the evidence and should be reversed because it violates the Fifth, Sixth, and Fourteenth Amendment to the United States Constitution, and Article I, Section 10 of the Constitution of the State of Ohio.
>
> 2. The guilty verdict in this case is against the manifest weight of the evidence and should be reversed because it violates the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and Article I, Section 10 of the Constitution of the State of Ohio.

(ECF Doc. 14-1, PageID#209-20). On December 9, 2013, the Ohio Court of Appeals notified Tucker that he could file a pro se brief within 20 days, which Tucker failed to file. (ECF Doc. 14-1, PageID#221). The State filed a brief in response to appellate counsel's *Anders's* brief. (ECF Doc. 14-1, PageID#222-40).

Upon independent review, the Ohio Court Appeals determined that there was an arguable issue to whether Tucker knowingly and intelligently waived his right to counsel and appointed Tucker new legal counsel for his appeal. (ECF Doc. 14-1, PageID#241). Tucker's new appellate counsel raised the following assignments of error on direct appeal:

1. Kareem Tucker's waiver of counsel was not knowing and intelligent when he did not understand the fundamental nature of the proceedings against him, in violation of his right to counsel under the Sixth and Fourteenth Amendments to the United States Constitution and Section 10, Article I of the Ohio Constitution. Tr. 63-71, Crim.R.44, *Faretta v. California*, 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562, 581 (1975), Tr. 63-71.

2. Kareem Tucker was erroneously permitted to stand trial when the record reflected that Tucker did not understand the proceedings against him and lacked the capacity to consult with his lawyer with a rational degree of understanding, in violation of his right to due process under the Fourteenth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution. *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 789, 4 L.Ed.2d 824 (1960), R.C. 2945.37(B), Tr. 63-71.

3. The trial court violated Kareem Tucker's rights to due process and a fair trial when, in the absence of sufficient evidence, the court found Tucker guilty of having weapons while under a disability in violation of the due process clauses to the Fifth and Fourteenth Amendment of the United States Constitution and Section 16, Article I of the Ohio Constitution. *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), *Jackson v. Virginia*, 443 U.S. 307, 309, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1970).

4. The trial court denied Kareem Tucker due process, in violation of the Fifth and Fourteenth Amendments to the United States Constitution, by retaliating against Mr. Tucker for exercising his rights to not plead guilty and have his case tried before a jury. Tr. 425-30.

5. A trial court commits reversible error when it imposes consecutive prison terms without satisfying the statutory mandates that authorize consecutive sentences. R.C. 2929.14(C)(4); Crim.R. 32, Tr. 425-430, Amended Judgment Entry of Conviction and Sentence, December 11, 2012.

(ECF Doc. 14-1, PageID#245-90).

On March 31, 2016, the Ohio Court of Appeals: (1) overruled Tucker's first two error assignments; (2) sustained Tucker's third error assignment; (3) reversed Tucker's Having Weapons Under Disability convictions; (4) sustained Tucker's fourth error assignment; (5) remanded Tucker's case to the trial court for a new sentencing hearing; and (6) determined that Tucker's fifth error assignment was premature. *State v. Tucker*, 2016-Ohio-1353, 62 N.E.3d 903 (9th Dist.). Tucker did not immediately appeal the state appellate court decision to the Ohio Supreme Court.

### C. Resentencing by Trial Court

6

Tucker, represented by counsel, was returned to the trial court and resentenced on May 19, 2016 by a different judge. The second trial court ordered Tucker to serve the following prison terms: Count 1 – 10 months; Count 2 – merged with Count 1; Count 3 – vacated by Ohio Court of Appeals; Count 4 – vacated by Ohio Court of Appeals; Count 5 – 16 months; Count 6 – merged with Count 1; Count 7 – 10 months; Count 8 – 10 months; Count 9 – merged with Count 1. (ECF Doc. 14-1, PageID#355-56). The aggregate sentence imposed was 13 years. (*See* ECF Doc. 14-1, PageID#355-56). Together with his other case, he was then sentenced to an increased consecutive sentence of 41 years.

### D.  Second Direct Appeal

On June 14, 2016, through counsel retained for resentencing, Tucker filed an untimely notice of appeal (ECF Doc. 14-1, PageID#361) and a motion for leave to file a delayed appeal (ECF Doc. 14-1, PageID#362) in the Ohio Supreme Court. Tucker later filed a motion to amend his notice of appeal (ECF Doc. 14-1, PageID367), which the state appellate court granted. (ECF Doc. 14-1, PageID#365). The state appellate court also granted Tucker leave to appeal. (ECF Doc. 14-1, PageID#368).  Tucker raised the following assignments of error pertaining to Lorain County Common Pleas Court Case No. 12CR084231 in his second direct appeal:

1.  The trial court erred, and to the prejudice of appellant, by entering a judgment of conviction and sentence on Count Five of the indictment, trafficking in cocaine, as a felony of the fourth degree, when appellant was found guilty by the jury of trafficking in cocaine as a felony of the fifth degree.

2.  The trial court erred, and to the prejudice of appellant, by entering a judgment of conviction and sentence on count five of the indictment, trafficking in cocaine, as a felony of the fourth degree, when appellant was found guilty by the jury of trafficking in cocaine as a felony of the fifth degree.

3.  The trial court erred, and to the prejudice of appellant, by imposing consecutive sentences totaling 13 years, when the court's finding under.

R.C. 2929.14(C)(4), "that consecutive sentences are not disproportionate to the seriousness of the offender's conduct," is not supported by the record.

4. The trial court erred, and to the prejudice of appellant, by imposing consecutive sentences totaling 13 years, when the court failed to make a finding that is sufficient under division (b) of R.C. 2929.14(C)(4), either in his judgment entry, or on the record, before imposing consecutive sentences.

*\*\**

7. The trial court erred, and to the prejudice of appellant, by ordering that the consecutive sentences imposed in Case No.12CR084231 be served consecutively to the consecutive sentence imposed in Case No. 10CR081026, for an aggregate prison term of 41 years, without making any of the findings required by R.C. 2929.14(C)(4), either in its judgement entries or on the record, before imposing consecutive sentences.

(ECF Doc. 14-1, PageID#373).

On June 12, 2017, under Case Nos. 16CA010963 and 16CA010964, the Ohio Court of Appeals overruled Tucker's error assignments and affirmed Tucker's convictions and sentences. *State v. Tucker*, 9th Dist. Lorain No. 16CA010964, 2017-Ohio-4215.

### E. Ohio Supreme Court Delayed Appeal

Tucker filed, pro se, a notice of appeal and a motion for delayed appeal to the Ohio Supreme Court on March 6, 2018. (ECF Doc. 14-1, PageID#480,482). Tucker's motion contended he had not been advised by either the clerk of court or his appellate counsel of the Ohio Court of Appeals decision and journal entry filed on June 13, 2017. Tucker argued his failure to file a timely notice of appeal should be excused due to ineffective assistance of counsel on the basis that counsel did not send Tucker the Court of Appeals decision. (ECF Doc. 14-1, PageID#490). The Ohio Supreme Court denied Tucker's motion for a delayed appeal in an entry filed April 25, 2018. *State v. Tucker*, 152 Ohio St. 3d 1441, 2018-Ohio-1600, 96 N.E.3d 297. Tucker did not timely file a petition for certiorari in the United States Supreme Court.

### F. Rule 26(B) Application to Reopen

8

On July 19, 2018, Tucker filed, pro se, a delayed application to reopen his direct appeal under Ohio App R.26(B). (ECF Doc. 14-1, PageID#504). Tucker averred in his accompanying affidavit that his appellate counsel on the direct appeal of his two cases following resentencing failed to provide him notice of the Ohio Court of Appeals decision in his consolidated appeals so that he could perfect a timely appeal thereof to the Ohio Supreme Court. (ECF Doc. 14-1, PageID#528-30). The log of the mail entries for Tucker for the period following his consolidated appeals did not show any mail on Mansfield Correctional Institution's "Legal Log." (ECF Doc. 14-1, PageID#529) Based on those facts, Tucker asserts the following grounds for relief under App. R. 26(B):

> **First Ground for Relief:**
> Appellate counsel was ineffective for failing to provide Appellant with notice of the Court of Appeals decision in order that Appellant could timely perfect an appeal to the Supreme Court of Ohio.
>
> **Second Ground for Relief:**
> Appellate counsel failed to identify and raise the fact that the jury verdict forms failed to identify which degree of offense for which it was returning a verdict of guilty, thereby mandating that Appellant be found guilty of the lowest degree offense.
>
> **Third Ground for Relief:**
> Appellate Counsel was ineffective for failing to raise that Appellant was initially sentenced to 25 years at his first sentencing hearing, but that on remand he was sentenced to 28 years, thereby showing that his sentencing was presumptively vindictive.

(ECF Doc. 14-1, Page ID#507-11).

The state did not file a response brief. The Ohio Court of Appeals found that, "even if Mr. Tucker has established good cause for the delay in submitting his application to reopen, it is without merit." (ECF Doc. 14-1, Page ID#546). The court acknowledged that Rule 26(B) applications to reopen are permitted to address claims of ineffective assistance of appellate counsel. (ECF Doc. 14-1, Page ID#546). But the court held, "we review

whether counsel's performance affected the outcome of the appeal to this Court, not an appeal to the Ohio Supreme Court." (ECF Doc. 14-1, Page ID #547). Thus, the Ohio Court of Appeals could not allow Tucker to reopen his direct appeal to show that he had been denied the right to appeal to the Ohio Supreme Court by his counsel's failure to send him a copy of the earlier Ohio Court of Appeals decision. The Ohio Court of Appeals concluded that Tucker's second and third grounds for relief failed on the merits. (ECF Doc. 14-1, Page ID#549).

## IV.  FEDERAL HABEAS CORPUS PETITION

On April 24, 2019, Tucker, through counsel, filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (ECF Doc. 1). In his petition, Tucker asserts the following grounds for relief[3]:

> **Ground One**: Tucker's 14th Amendment due process rights were violated when he was not professionally evaluated by an expert to determine his competency to proceed in his pretrial and trial proceedings. Throughout the proceedings, Tucker displayed many indicia of incompetency, showed by his repeated failures to have a rational understanding of the proceedings against him and to consult with a lawyer with a reasonable degree of rational understanding. The trial court had a constitutional duty to sua sponte to order Tucker to undergo a competency evaluation.
>
> **Ground Two:** Tucker's 14th Amendment due process rights were violated when the trial court allowed him to proceed pro se without a knowing and intelligent waiver of counsel. Throughout the proceedings, Tucker displayed many indicia of incompetency, showed by his repeated failures to have a rationale understanding of the proceedings against him and to consult with a lawyer with a reasonable degree of rational understanding. The trial court had a constitutional duty to ensure that Tucker's right to effective assistance of counsel was protected.
>
> **Ground Three:** Tucker's 14th Amendment due process rights were violated when the trial court imposed 13 years consecutive to Case No. 10CR081026, after its previous imposition of 13 years, 4 months consecutive to Case No. 10CR081026 was deemed retaliatory by the Ninth District Court of Appeals for Tucker taking his case to trial.

---

[3] Tucker's grounds for habeas relief asserted in his petition are set forth verbatim herein, including certain typographical and/or grammatical errors.

(ECF Doc. 1, PageID #7-19). Respondent filed the return of writ on August 23, 2019. (ECF Doc. 14). Tucker through counsel filed his traverse to the return of writ on September 20, 2019. (ECF Doc. 16). On October 4, 2019, Respondent filed a reply to Tucker's traverse. (ECF Doc. No. 18).

## V.    LEGAL STANDARDS

### A.  Jurisdiction

28 U.S.C. § 2254(a) authorizes this court to entertain an application for a writ of habeas corpus "on behalf of a person in custody pursuant to the judgment of a State court." A state prisoner may file a § 2254 petition in the "district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him" 28 U.S.C. § 2241(d). The Court of Common Pleas of Lorain County sentenced Tucker, and the Court takes judicial notice that Lorain County is within this court's geographic jurisdiction. Accordingly, this Court has jurisdiction over petitioner's § 2254 petition.

### B.  AEDPA Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs Gordon's petition for writ of habeas corpus. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997); *Murphy v. Ohio*, 551 F.3d 485, 493 (6th Cir. 2009). AEDPA was enacted "to reduce delays in the execution of state and federal criminal sentences, particularly in capital cases," and "'to further the principles of comity, finality, and federalism[.]'" *Woodford v. Garceau*, 538 U.S. 202, 206 (2003) (quoting *Williams v. Taylor*, 529 U.S. 420, 436 (2000)). The Act "recognizes a foundational principle of our federal system: State courts are adequate forums for the vindication of federal rights." *Burt v. Titlow*, 571 U.S. 12, 19 (2013). It therefore "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Id*.

11

One of AEDPA's most significant limitations on district courts' authority to grant writs of habeas corpus is found in § 2254(d). That provision prohibits federal habeas relief with respect to a "claim that was adjudicated on the merits in State court proceedings" unless the state-court decision either:

>    (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>    (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Habeas courts review the "last *explained* state-court judgment" on the federal claim at issue. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991) (emphasis in original). A state court has adjudicated a claim "on the merits[,]" and AEDPA deference applies, regardless of whether the state court provided little or no reasoning at all for its decision. *Harrington v. Richter*, 562 U.S. 86, 99 (2011).

"Clearly established Federal law" for purposes of § 2254(d)(1) "is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). It includes only "'the holdings, as opposed to the dicta, of [Supreme Court] decisions.'" *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Howes v. Fields*, 565 U.S. 499, 505 (2012)). The state court decision need not refer to relevant Supreme Court cases or even demonstrate an awareness of them; it is sufficient that the result and reasoning are consistent with Supreme Court precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam). A state court does not act contrary to clearly established law when the precedent of the Supreme Court is ambiguous or nonexistent. *See, e.g., Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) (per curiam).

12

A state-court decision is contrary to "clearly established Federal law" under § 2254(d)(1) only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). And "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

A state court's determination of fact is unreasonable under § 2254(d)(2) only if the court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528-29 (2003). The petitioner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 571 U.S. at 18 (quoting § 2254(e)(1)); *see also Rice v. White*, 660 F.3d 242, 250 (6th Cir. 2011). "This standard requires the federal courts to give considerable deference to state court decisions." *Ferensic v. Birkett*, 501 F.3d 469, 472 (6th Cir. 2007). The Supreme Court has cautioned, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" *Burt*, 571 U.S. at 18 (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)).

Indeed, the Supreme Court has repeatedly emphasized that § 2254(d), as amended by AEDPA, is an intentionally demanding standard, affording great deference to state court adjudications of federal claims. The Supreme Court has admonished that a reviewing court may not "treat[] the unreasonableness question as a test of its confidence in the result it would reach under de novo review[,]" and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011); *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination

13

was unreasonable – a substantially higher threshold."). Rather, § 2254(d) "reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,'" and does not function as a "substitute for ordinary error correction through appeal." *Harrington*, 562 U.S. at 102-03, *quoting Jackson*, 443 U.S. at 333 n.5 (Stevens, J., concurring in judgment). Thus, a petitioner "must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103. The Supreme Court readily acknowledges that this is a very high standard, observing that: "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 102.

### C.  Exhaustion and Procedural Default

Under AEDPA, state prisoners must exhaust all possible state remedies, or have no remaining state remedies, before a federal court can review a petition for a writ of habeas corpus on the merits. 28 U.S.C. § 2254(b) and (c); *see also Rose v. Lundy*, 455 U.S. 509 (1982). This entails giving the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In other words, "the highest court in the state in which the petitioner was convicted [must have] been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). The exhaustion requirement, however, "refers only to remedies still available at the time of the federal petition." *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982). It "does not require pursuit of a state remedy where such a pursuit is clearly futile." *Wiley v. Sowders*, 647 F.2d 642, 647 (6th Cir. 1981).

Procedural default is a related but "distinct" concept from exhaustion. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). It occurs when a habeas petitioner fails to obtain

consideration of a federal constitutional claim by state courts because he failed to: (1) comply with a state procedural rule that prevented the state courts from reaching the merits of the petitioner's claim; or (2) fairly raise that claim before the state courts while state remedies were still available. *See generally Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977); *Engle*, 456 U.S. at 125 n.28; *Williams*, 460 F.3d at 806. In determining whether there has been a procedural default, the federal court again looks to the last explained state-court judgment. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991); *Combs v. Coyle*, 205 F.3d 269, 275 (6th Cir. 2000).

A claim is fairly presented when it has been asserted as a federal constitutional issue at every state of the state court review process. *Thompson v. Warden, Belmont Corr. Inst.*, 598 F.3d 281, 285 (6th Cir. 2010); *Williams*, 460 F.3d at 806.

Procedural default, however, can be excused and will not preclude consideration of a claim on federal habeas review if the petitioner can demonstrate: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law;" or (2) "failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A "fundamental miscarriage of justice" can occur only when the procedurally defaulted claim – supported by new reliable evidence not presented at trial – would establish that the petitioner was "actually innocent" of the offense. *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006).

## VI.    STATUTE OF LIMITATIONS

### A.  Expiration and Statutory Tolling

AEDPA imposes a one-year statute of limitations upon all applications seeking a writ of habeas corpus. *See* 28 U.S.C. § 2244(d)(1). The one-year limitations period begins to run from the latest of the following four scenarios:

    (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

    (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

    (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

    (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

A conviction becomes final under § 2244(d)(1)(A) when direct review concludes, not when the petitioner has exhausted all state remedies. *Payton v. Brigano*, 256 F.3d 405, 408 (6th Cir. 2001); *see also Bronaugh v. Ohio*, 235 F.3d 280, 283-84 (6th Cir. 2000) (noting that the one-year statute of limitations period under § 2244(d)(1)(A) does not begin to run until the day after the deadline to file a petition for a writ of certiorari in the United States Supreme Court expires). When a petitioner does not file an appeal from the state appellate court to the state supreme court, the judgment becomes final under § 2244(d)(1)(A) when the time for seeking such review expires. *Gonzalez v. Thaler*, 565 U.S. 134, 137 (2012). In Ohio, a criminal defendant has 45 days after the Ohio Court of Appeals issues its decision to seek review by the Ohio Supreme Court. Ohio S. Ct. Prac. R. 7.01(A)(1).

The one-year statute of limitations is tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2); *see also Lopez v. Wilson*, 426 F.3d 339, 351-52 (6th Cir. 2005) (en banc) (holding that a motion to reopen under Ohio R. App. P. 26(B) is a collateral proceeding). A post-conviction motion to withdraw a guilty plea, filed well after a

defendant misses the deadline to file a direct appeal and the § 2244(d)(1)(A) limitations period has begun to run, is a tolling motion under 28 U.S.C. § 2244(d)(2). *See Eberle v. Warden, Mansfield Corr. Inst.*, 532 F. App'x 605, 608-09 (6th Cir. 2013) (explaining that it would "cut[] against the grain of AEDPA's purpose and [Sixth Circuit] precedents" promoting the finality of convictions and curbing dilatory tactics to allow a habeas petitioner to indefinitely reset the limitations period by delaying the filing of a plea-withdrawal motion in states (such as Ohio) that do not set time limits on such motions).

Here, Subsection (d)(1)(A) applies in this Court's calculation of the start of the statute of limitations. The initial direct state appellate review of Tucker's conviction resulted in vacating his sentence and remanding to the trial court for resentencing. (ECF Doc. 14-1, PageID#349-50). The new sentence was imposed by a journal entry filed on May 20, 2016. (ECF Doc. 14-1, PageID#355). Tucker directly appealed his sentence to the Ohio Court of Appeals regarding the issue of improper consecutive sentencing, which the state appellate court upheld on June 12, 2017. (ECF Doc. 14-1, PageID#478). While Tucker had 45 days to appeal this adverse decision to the Ohio Supreme Court, he failed to do so. Thus, the one-year AEDPA statute of limitations began to run on July 28, 2017—45 days after the Ohio Court of Appeals' adverse decision.

The statute of limitations clock first paused when Tucker filed a motion for leave to file a delayed appeal with the Ohio Supreme Court on March 6, 2018—221 days of Tucker's AEDPA statute of limitations had passed. On April 25, 2018, the Ohio Supreme Court denied Tucker's motion. (ECF Doc. 14-1, PageID#503). Starting the next day, the statute of limitations clock started from where it left off, meaning that 221 days of the statute of limitations period had already elapsed.

Eighty-two days later (now 302 days into the limitations period), the limitations period stopped again on July 19, 2018, when Tucker filed a delayed application under Ohio App. R. 26(B) to reopen his direct appeal that challenged his resentencing. (ECF Doc. 14-1, PageID#504). The Ohio Court of Appeals denied Tucker's application on September 28, 2018. (ECF Doc. 14-1, PageID3546-49). Because Tucker could have appealed the denial of his application to the Ohio Supreme Court but failed to do so, the limitations clock resumed on November 13, 2018—45 days later. And it continued to run until the 365-days limitations period expired on January 12, 2019. Tucker did not file another tolling motion before that deadline expired. Further, Tucker has not argued (and his petition does not indicate) that any of his claims are entitled to one of the later limitations periods described in 28 U.S.C. § 2244(d)(1)(B)-(D). (*See generally* ECF Doc. 1; ECF Doc. 16). Tucker's petition, file-stamped on April 24, 2019, comes more than three months too late. (*See* ECF Doc. 1). Thus, Tucker's petition is untimely.

### B. Equitable Tolling

Because AEDPA's one-year statute of limitations is not jurisdictional, a court may still entertain an untimely petition if the petitioner is entitled to equitable tolling. *Holland v. Florida*, 560 U.S. 631, 645 (2010). If a petitioner seeks equitable tolling, he must show that (1) he has pursued his rights diligently, and (2) some extraordinary circumstance stood in his way and prevented timely filing. *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010) (citing *Holland*, 560 U.S. at 649); *Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 735 (6th Cir. 2011); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 462 (6th Cir. 2012). There is also an equitable exception to the one-year limitations period when a petitioner makes a "convincing showing of actual innocence." *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013).

### *1. Diligent Pursuit of Rights and Extraordinary Circumstances*

It is difficult to colorably argue that Tucker pursued his rights diligently. The window for filing a timely federal habeas petition extended from July 28, 2017, when the statute of limitations began to run, through January 12, 2019—a total of 354 days. Indeed, Tucker's former habeas lawyer acknowledged that he knew Respondent would contest the timeliness of the petition, but that he could file the petition before exhausting state court remedies and then seek a stay of the habeas proceedings to complete exhaustion so that the petition was not untimely. (ECF. Doc. 19, Page ID#1613). His former lawyer, however, erroneously thought the statute of limitations began running on April 25, 2018, when the Ohio Supreme Court denied Tucker's motion for a delayed appeal. (ECF Doc. 16, PageID#1032). However, even under this erroneous scenario, one year passed before Tucker filed his petition on April 24, 2019. The record is bereft of any explanation why the petition was not filed earlier. Tucker does not contend that some extraordinary circumstance stood in his way and prevented timely filing. And to the extent that Tucker would assert that his attorney's miscalculation of the statute of limitations constitutes a basis for equitable tolling, that claim should be rejected. *See, e.g.*, *Jurado v. Burt*, 337 F.3d 638, 643 (6th Cir. 2003) ("[A] lawyer's mistake is not a valid basis for equitable tolling.").

### *2. Mental Incompetence*

Tucker also argues that equitable tolling applies because he is mentally incompetent. (ECF Doc. 16, PageID #1027-29). As Tucker acknowledges, he bears the burden to establish mental incompetence. (ECF Doc. 16, Page ID#1027). Mental incapacity can warrant equitable tolling if a petitioner meets his burden of showing: (1) that he is mentally incompetent and (2) that his mental incompetence caused his failure to comply with the statute of limitations. *Ata v. Scutt*, 662 F.3d 736, 742 (6th Cir. 2011). Blanket assertions of mental incompetence are insufficient to toll the statute of limitations. *Id.* A petitioner only satisfies this test when he offers competent evidence

demonstrating that he was unable rationally or factually to understand the need to timely file, or that his mental state rendered him personally unable to prepare his post-conviction petition. *See Stiltner v. Hart*, 657 Fed. App'x. 513, 521 (6th Cir. 2016). Regardless, determining whether these elements are present is a fact-intensive inquiry, and the Sixth Circuit instructs that this doctrine should be applied sparingly. *Ata*, 662 F.3d at 741.

Here, Tucker argued that the trial record contains "a plethora of indicia of incompetency" sufficient "to make a reasonable judge doubt [Tucker's] competency and conduct further inquiry." (ECF Doc. 16, Page ID#1027). Tucker cites to a number of examples, pointing to a frivolous *pro se* filing to the Ohio Supreme Court on March 27, 2017 and his allegedly irrational statements and behavior in the face of severe sentencing consequences. According to his former attorney, Tucker's previous filings were not competent until his *pro se* filing of his motion for delayed appeal, which was composed with assistance from a fellow inmate. (ECF. Doc. 16, Page ID #1028-29).

Tucker has failed to demonstrate that he is mentally incompetent and that his mental incompetence caused his failure to comply with AEDPA's statute of limitations. Tucker points to his allegedly irrational statements at pre-trial hearings such as ones where he stated that: (1) he was a Moor; (2) he was a "sovereign citizen of the Ohio Republic"; and (3) that only common law applied to him. (ECF Doc. 8, PageID#8). Yet, Tucker's allegedly irrational statements to the trial court are the same type of statements the Sixth Circuit and other federal courts have rejected as a basis for finding incompetence. *See, e.g.*, *United States v. Coleman*, 871 F.3d 470, 476 (6th Cir. 2017) (collecting cases); *United States v. Tucci-Jarraf*, 939 F.3d 790, 797 (6th Cir. 2019) ("the Supreme Court has never suggested that eccentric worldviews, standing alone, establish mental incompetence") (citing *Cheek v. United States*, 498 U.S. 192, 195-96 (1991)). While examination by a licensed psychologist prior to trial might have provided additional data regarding Tucker's

mental health, neither Ohio nor federal law required the state judge to order *sua sponte* such an examination on the record before him. *See, e.g.*, *State v. Spivey*, 81 Ohio St. 3d 405, 692 N.E.2d 151, 157 (1998); *State v. Berry*, 72 Ohio St. 3d 354, 650 N.E. 2d 433, 438-39 (1995); *State v. Monroe*, 105 Ohio St. 3d 384, 827 N.E. 2d 285, 303 (2005); *Tucci-Jarraf*, 939 F.3d at 795 ("[m]ental incompetence is a 'high' bar to clear") (quoting *United States v. Miller*, 531 F.3d 340, 350 (6th Cir. 2008)). *See also United States v. Hood*, 827 F. App'x 524, 528-29 (6th Cir. 2020) ("[w]e also grant a trial court great deference in its assessment of a defendant's competence") (citing *United States v. Stafford*, 782 F.3d 786, 791 (6th Cir. 2015)).

Even though the judge did not order a psychological evaluation, the judge nevertheless: (1) conducted a colloquy to determine that Tucker was competent and (2) made a finding that Tucker was competent. The judge asked Tucker if he believed he was competent to represent himself and Tucker stated that he was. (ECF Doc. 14-1, PageID#613-14). Although Tucker resisted answering some of the trial court's questions, Tucker indicated that he understood what risk he was taking— even if it was based on his own misguided understanding that he would have to "contract with the Court." (ECF Doc. 14-1, PageID#615-16). And when the judge indicated that he was not sure that Tucker understood the risks, Tucker responded "Well, obviously, I do if I don't want [Attorney Nehr] to represent me. What that tell you then?" (ECF Doc. 14-1, PageID#616).  The court asked his educational level and told Tucker that the higher one's educational level, the more likely it is that one is making an intelligent and sound decision. Tucker responded, "Well I don't want this – I don't want [Attorney Nehr] here." (ECF Doc. 14-1, PageID#617). The trial court asked Tucker if he had training in the law, to which Tucker responded that he was self-trained. (ECF Doc. 14-1, PageID#620). Finally, the trial court informed him of the court's procedures and again offered that appointed counsel could stay and advise him in conducting a voir dire or direct examination. (ECF

Doc. 14-1, PageID#620-22). To all of these offers, Tucker repeated his desire to proceed without a lawyer. Based on review of the record, it appears that the trial court conducted a colloquy and deemed him competent.

Tucker has also failed to demonstrate a causal connection between his mental health and the late filing of his habeas petition. Taking into account statutory tolling, Tucker had over 534 days from the start of the limitations period to its conclusion to file his § 2254 petition. He could have filed it at any point during that period. Although Tucker asserted that mental incompetence prevented timely filing, he filed two well-drafted pro se filings in the state courts during the AEDPA limitations period. But he did not file a habeas petition at any point during this period. And he has not presented an explanation for this discrepancy. Thus, Tucker has failed to meet his burden in demonstrate that he is entitled to equitable tolling.

Based on these findings, I recommend that the Court find that Tucker is not entitled to equitable tolling of the AEDPA statute of limitations. If that recommendation is accepted, Tucker's three claims for relief are barred by the AEDPA statute of limitations and should be dismissed.

## VII.    EXHAUSTION AND PROCEDURAL DEFAULT

In the alternative, I recommend that the Court find that all three of Tucker's claims are procedurally defaulted. A claim is procedurally defaulted when a habeas petitioner fails to obtain consideration of a federal constitutional claim by state courts because he failed to: (1) comply with a state procedural rule that prevented the state courts from reaching the merits of the petitioner's claim; or (2) fairly raise that claim before the state courts while state remedies were still available. *See generally Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977); *Engle*, 456 U.S. at 125 n.28; *Williams*, 460 F.3d at 806. In determining whether there has been a procedural default, the federal

court again looks to the last explained state court judgment. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991); *Combs v. Coyle*, 205 F.3d 269, 275 (6th Cir. 2000).

To determine whether the court is precluded from reviewing a petitioner's federal habeas claim due to a procedural default, the court must conduct a four-part test. *Barton v. Warden, S. Ohio Corr. Facility*, 786 F.3d 450, 464 (6th Cir. 2015) (citing *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986)).

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule…. Second, the court must decide whether the state courts actually enforced the state procedural sanction….Third, the court must decide whether the state procedural forfeiture is an 'adequate and independent' state ground on which the state can rely to foreclose review of a federal constitutional claim …. [Fourth,o]nce the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate.,, that there was cause' for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin*, 785 F.2d at 138 (citations omitted). In *Coleman v. Thompson*, 501 U.S. 722, 753 (1991), the Supreme Court explicitly reaffirmed the requirement of *Murray v. Carrier*[4] that "cause" under the cause and prejudice test must be something external to the petitioner, *i.e.,* something that cannot fairly be attributed to him. Notably, however, "if the procedural default is the result of ineffective assistance of counsel, the Sixth Amendment itself requires that the responsibility for the default be imputed to the State." *Murray v. Carrier*, 477 U.S. at 488. However, for ineffective assistance claims to be sufficient cause to excuse a procedural default, the ineffective assistance claim must itself be fairly presented to the state court before it can be raised in a federal habeas case. *Id.* at 489.

Even if not subject to excuse because of demonstrated cause and prejudice, a federal habeas court can consider a defaulted claim in order to correct a fundamental miscarriage of justice. *See*

---

[4] 477 U.S. 478, 488 (1986).

*Smith v. Warden, Toledo Corr. Inst.*, 780 F. App'x 208, 220-21 (6th Cir. 2019) (explaining that a "fundamental miscarriage of justice" requires the petitioner to show that his claim is based on new evidence that would reasonably have led jurors to conclude that he was actually innocent).

### A.  Grounds One and Two

Grounds One and Two of Tucker's petition are procedurally defaulted. Tucker did present the trial court's failure to order a competency exam and Tucker's alleged lack of knowing and intelligent waiver of counsel claims in the Ohio Court of Appeals in his initial direct appeal. (ECF Doc. 14-1, PageID#246-48). However, Tucker concedes he did not present his claims to the Ohio Supreme Court. (*See* ECF Doc. 1, PageID#4). With respect to the first *Maupin* factor, Tucker failed to comply with a state procedural rule. Specifically, under Ohio S. Ct. Prac. R. 7.01(A)(1), jurisdictional appeals to the Ohio Supreme Court must be commenced within 45 days from the entry of the judgment that is the subject of the appeal. Tucker could have appealed the March 31, 2016 Ohio Court of Appeal's decision affirming his conviction and rejected the two claims that now are asserted as Tucker's Ground One and Ground Two claim. (ECF Doc. 14-1, PageID#333). The deadline for that appeal was May 16, 2016. Yet instead of pursuing this appeal, Tucker and his counsel made a tactical decision not to appeal because they anticipated obtaining a more favorable sentence upon remand and "did not want to disrupt the momentum from the prior appellate decision pointing to a more reasonable sentence." (ECF Doc. 1, PageID#4-5).

Further, Tucker failed to comply with state procedural rules for a second time when he failed to present his Ground One and Two claims to the Ohio Supreme Court after he received the second Ohio Court of Appeals decision. After the state appellate court's decision entry on June 12, 2017, the deadline for Tucker to appeal to the Ohio Supreme Court was July 27, 2017. (ECF Doc.14-1, PageID#491).  But Tucker did not appeal to the Ohio Supreme Court until March 6,

2018, when he filed his motion for delayed appeal. (ECF Doc. 14-1, PageID#482). He explained that he failed to timely file because his appellate attorney for his second appeal failed to send him a copy of the Ohio Court of Appeals decision. (ECF Doc. 1, PageID#7; ECF Doc. 14-1, PageID#489-90). The Ohio Supreme Court enforced its jurisdictional appeal filing deadline by denying Tucker's motion to pursue a delayed appeal. (ECF Doc. 14-1, PageID#503). The Sixth Circuit has ruled that denial of a motion to pursue a delayed appeal is "a procedural ruling, not a ruling on the merits." *Bonilla v. Hurley*, 370 F.3d 494, 497. "Where a state court is entirely silent as to its reasons for denying requested relief, we assume that the state court would have enforced any applicable procedural bar." *Id.* Thus, the denial of Tucker's motion for delayed appeal is an adequate and independent state ground on which the Ohio Supreme Court foreclosed review of Tucker's Ground One and Ground Two claims.

To the extent that Tucker asserts ineffective assistance of counsel to excuse his procedural default, this Court need not address the merits of the claim in this decision because that claim itself is also procedurally defaulted. Tucker did raise an ineffective assistance of appellate counsel claim regarding his counsel's alleged failure to provide him with notice of the second Ohio Court of Appeals decision. (ECF Doc. 14-1, PageID#507). However, Tucker procedurally defaulted by not appealing the denial of the Rule 26(B) application to the Ohio Supreme Court. *Goldberg v. Maloney*, 692 F.3d 534, 537-38 (6th Cir. 2012) (finding that the denial of a motion for delayed appeal does not exhaust a claim of ineffective assistance of appellate counsel). Under Ohio Sup. Ct. Prac. R. (A)(4)(c), the Ohio Supreme Court does not permit delayed appeals of claims brought pursuant to Ohio App. R. 26(B). Because delayed appeals of claims brought pursuant to Ohio App. R. 26(B) are not permitted, Tucker is unable to exhaust his state-court review of that claim.

Therefore, his ineffective assistance of appellate counsel claim is procedurally defaulted and cannot serve as cause to excuse his procedural default.

Accordingly, I recommend that the Court dismiss Tucker's Ground One and Ground Two claims as procedurally defaulted.

### B.  Ground Three

Finally, I recommend that Tucker's Ground Three claim is procedurally defaulted because he failed to fairly present his claim at all levels of the state court as a federal issue. Tucker's assertion that he raised this issue in his second direct appeal is not well-taken. Tucker contends that he raised the vindictiveness claim "in substance" because his appellate counsel argued that the sentencing judge made conclusory recitations of the Ohio Revised Code sentencing factors. (ECF Doc. 1, PageID#18). He also points to his argument that his sentence was extremely disproportionate to that of his codefendant, Clayton. (ECF Doc. 1, PageID#18). Yet Tucker concedes he "did not formally finish" his due process analysis under *Pearce*. (ECF Doc. 1, PageID#18). Indeed, a review of the record makes clear that Tucker never raised *Pearce* or stated his resentencing issue as a vindictive sentencing federal constitutional due process issue. Rather, Tucker confined his analysis to issues regarding the sentencing factors under the Ohio Revised Code, a state law issue. Tucker's appeal failed to: (1) rely upon federal cases employing constitutional analysis; (2) rely upon state cases employing federal constitutional analysis; (3) phrase his claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; and (4) allege facts well within the mainstream of constitutional law. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006) ("To fairly present a claim to a state court, a petitioner … must present his claim to the state courts as a federal constitutional issue – not merely as an issue arising under state law.") (citation omitted and quotation marks omitted).

26

Thus, in sum, Tucker had presented his claim as a *state law* issue, not a federal issue in his second direct appeal. *See Baston v. Bagley*, 282 F.Supp.2d 655, 661 (N.D. Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition.").

Finally, Tucker has not established cause or prejudice to excuse his procedural default on this issue. This Court acknowledges that Tucker raised the issue of appellate counsel's failure to raise the vindictive sentencing issue in a delayed Ohio App. R. 26(B) motion. However, this claim became procedurally defaulted when Tucker failed to appeal the Ohio Court of Appeals' denial of his motion to the Ohio Supreme Court. *Goldberg*, 692 F.3d at 537-38 (6th Cir. 2012) (finding that the denial of a motion for delayed appeal does not exhaust a claim of ineffective assistance of appellate counsel). Under Ohio Sup. Ct. Prac. R. (A)(4)(c), the Ohio Supreme Court does not permit delayed appeals of claims brought pursuant to Ohio App. R. 26(B). Because delayed appeals of claims brought pursuant to Ohio App. R. 26(B) are not permitted, Tucker is unable to exhaust his state-court review of that claim. Therefore, Tucker's ineffective assistance of appellate counsel claim is procedurally defaulted and cannot serve as cause to excuse his procedural default

## VIII.  MERITS

### A.  Ground One

To obtain a writ of habeas corpus, Tucker has the burden to prove that he is "in custody" in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a). Because the Ohio Court of Appeals addressed Tucker's competency claim on the merits, Tucker's claims are subject to the deferential reasonableness standard under AEDPA. *Johnson v. Williams*, 568 U.S. 289, 292 (2013). Under AEDPA, habeas relief is only available when the state court's decision: (1) was contrary to, or involved an unreasonable application of, clearly established

federal law as determined by the Supreme Court; or (2) was based on an unreasonable determination of the facts in light of the record before the state court. 28 U.S.C. § 2254(d). The relevant question is not whether the state court got it right or wrong, but whether the state court's determination was "unreasonable—a substantially higher threshold." *Schriro v. Landrigan*¸ 550 U.S. 465, 473 (2007). "[A] strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The petitioner must show that the state court's "decision was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103. If the Supreme Court has not issued a ruling on the habeas petitioner's claims, then it cannot be said that a state court ruling was contrary to or an unreasonable application of clearly established federal law determined by the Supreme Court. *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

I recommend that Tucker's Ground One claim be denied because it lacks merit. In his Ground One claim, Tucker asserts that the trial court erred by failing to *sua sponte* order a competency evaluation despite him displaying "many indicia of incompetency." (ECF Doc. 1, PageID#7-8). He states that a non-lawyer named King Ayettey Zubaidah was "making his rounds in the City of Lorain and the Lorain County Justice Center, convincing young African-American defendants…to believe that they [were] Moors not subject to Ohio law." (ECF Doc. 1, PageID# 8). Tucker also contends that Zubaidah was later found to have engaged in the unauthorized practice of law by interfering in attorney-client relationships and convincing defendants not to accept favorable plea deals negotiated by their attorneys. (ECF Doc. 1, PageID#8). He cites to exchanges between Tucker and the trial court during pretrial hearings where he asserted that he was Moor and refused the assistance of counsel. (ECF Doc. 1, PageID#8-13). In addition, Tucker

28

points to a series of pro se frivolous filings from prison as proof of his "complete lack of rational understanding of the legal system." (ECF Doc. 1, PageID# 15).

Respondent argues that Tucker's Ground One claim fails because he has not established that the state appellate court's decision to deny his federal constitutional incompetency claim is contrary to or an unreasonable application of federal constitutional due process and the competency to stand trial.

To assess whether the appellate court's decision is entitled to AEDPA deference, I turn to what the Ohio Court of Appeals said on the issue:

> {¶4} Mr. Tucker's second assignment of error is that the trial court abused its discretion by failing to sua sponte order Mr. Tucker to undergo a competency evaluation before trial. We disagree.

> {¶5} "Fundamental principles of due process require that a criminal defendant who is legally incompetent shall not be subjected to trial." *State v. Berry*, 72 Ohio St.3d 354, 359 (1995). The measure of competency in this context is whether a defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding – and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960). "[W]hen there is evidence to create a sufficient doubt of a defendant's competency to stand trial, a trial court may be required to conduct further inquiry on the question and a trial court must always be alert to circumstances suggesting that the accused may be incompetent to stand trial." *State v. Corethers*, 90 Ohio App.3d 428, 433 (8th Dist.1993), citing *Drope v. Missouri*, 420 U.S. 162, 177, 180 (1975). "An evidentiary competency hearing is constitutionally required whenever there are sufficient indicia of incompetency to call into doubt defendant's competency to stand trial." *State v. Were*, 94 Ohio St.3d 173 (2002), paragraph two of the syllabus.

> {¶6} R.C. 2945.37 addresses the competency of criminal defendants in Ohio. It provides:

>> In a criminal action in a court of common pleas, a county court, or a municipal court, the court, prosecutor, or defense may raise the issue of the defendant's competence to stand trial. If the issue is raised before the trial has commenced, the court shall hold a hearing on the

issue as provided in this section. If the issue is raised after the trial has commenced, the court shall hold a hearing on the issue only for good cause shown or on the court's own motion.

* * *

A defendant is presumed to be competent to stand trial. If, after a hearing, the court finds by a preponderance of the evidence that, because of the defendant's present mental condition, the defendant is incapable of understanding the nature and objective of the proceedings against the defendant or of assisting in the defendant's defense, the court shall find the defendant incompetent to stand trial and shall enter an order authorized by section 2945.38 of the Revised Code

R.C. 2945.37(B), (G). When a trial court is confronted with whether to order a competency hearing sua sponte, "relevant considerations include: (1) doubts expressed by counsel as to the defendant's competence; (2) evidence of irrational behavior; (3) the defendant's demeanor at trial; and (4) prior medical opinion relating to competence to stand trial." *State v. Rubenstein*, 40 Ohio App.3d 57, 60-61 (8th Dist.1987); *Elyria v. Bozman*, 9th Dist. Lorain No. 01CA007899, 2002-Ohio-2644, ¶ 7. *See also State v. Spivey,* 81 Ohio St.3d 405, 410 (1998) (noting that at the plea stage, a trial court is not required to order a competency hearing sua sponte if the record does not reveal indicia of incompetency).

**{¶7}** Mr. Tucker urges us to conclude that the trial court was required to order a competency hearing based upon his lengthy pretrial colloquies with the trial court in which he rejected the jurisdiction of the court, maintained that the case was a commercial matter and that the trial court could not exercise authority over his "trust," refused to "contract" with the judge, and demanded that the judge place his oath of office on the record. Filings by Mr. Tucker confirm that his statements, although apparently bizarre, are consistent with the political philosophy that he espouses – that he is a "Moorish Native American," a sovereign individual not subject to the laws or to government institutions. As one court has recognized, individuals who espouse such political philosophies "cling[] doggedly to the sovereign citizen script * * *. The colloquy with the court is often characterized by frequent interruptions by the defendant, who attempts to talk over the judge. For the most part, the defendant's statements to the Court are gibberish." *United States v. Cartman*, N.D.Ga. No. 1:10-cr-512-01-JEC, 2013 WL 2445158, *2 (June 5, 2013).

{**¶8**} Other courts, when faced with similar circumstances, have consistently concluded that while such behavior may reflect unusual beliefs and may go so far as to obstruct trial court proceedings, they are not indicia of incompetency that require a hearing. "[M]erely believing in fringe views does not mean someone cannot cooperate with his lawyer or understand the judicial proceedings around him." *United States v. Gooch*, 595 Fed.Appx. 524, 527 (6th Cir.2014). *Accord United States v. Landers*, 564 F.3d 1217, 1222 (10th Cir.2009) (the defendant's "bizarre behavior" demonstrated not that he was incompetent to stand trial, but that he was "an antigovernment protestor * * * engaged in obstructionism[.]"); *United States v. Oehle*r, 116 Fed.Appx. 43, 45 (8th Cir.2004) (concluding that the defendant's "nonsensical statements were simply tax protester rhetoric" and noting that the magistrate had found the defendant "was educated and intelligent, understood the charges against him, had a basic understanding of the criminal process, and had the ability to communicate effectively * * *."); *United States v. James*, 328 F.3d 953, 955 (7th Cir.2003) (the fact that a defendant advances unusual political beliefs does not "imply mental instability or concrete intellect * * * so deficient that trial is impossible.")

{**¶9**} It is worth noting that during the pretrial proceedings, Mr. Tucker opposed two motions made by the State, prevailing in his arguments on one of them. Although he maintained his anti-government rhetoric, Mr. Tucker participated in the proceedings. Given all of Mr. Tucker's statements in their context within the pretrial proceedings, we cannot conclude that there was sufficient indicia of incompetency to require the trial court to sua sponte order a competency evaluation. Mr. Tucker's second assignment of error is overruled.

*State v. Tucker*, 2016-Ohio-1353, 62 N.E. 3d 903, ¶¶4-9.

First, the state court's decision was not contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court. This Court finds that there is no controlling Supreme Court precedent that created clearly established federal law obligating a trial court to *sua sponte* order a competency hearing due to indicia of competency. Neither Tucker, Respondent, nor independent research has identified any Supreme Court case that created such a constitutional obligation. As a result, the Ohio Court of Appeals' decision is not, nor can be contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court. *See Musladin*, 549 U.S. at 77.

31

I also find that the Ohio Court of Appeals' determination that the trial court did not err in failing to hold a hearing on Tucker's competency was not an unreasonable determination of the facts in light of the record before the state court. The record demonstrates that Tucker did oppose two motions made by the State. (*See* ECF Doc. 14-2, PageID#577-85). He even prevailed on his argument against one of the State's motions. (*See* ECF Doc. 14-2, PageID#581-84). While the Court acknowledges that Tucker was probably influenced—and misled—by Zubaidah's unlicensed legal advice, the record does reflect that Tucker participated in the proceedings in some form.

Although the Supreme Court does not have clearly established federal law on this issue, federal law supports the Ohio Court of Appeals' reasoning that Tucker's statements were not sufficient indicia of incompetency to require the trial court to *sua sponte* order a competency evaluation. In fact, Tucker's allegedly irrational statements to the trial court are the same type of statements the Sixth Circuit and other federal courts have rejected as a basis for finding incompetence. *See, e.g.*, *United States v. Coleman*, 871 F.3d 470, 476 (6th Cir. 2017) (collecting cases); *United States v. Tucci-Jarraf*, 939 F.3d 790, 797 (6th Cir. 2019) ("the Supreme Court has never suggested that eccentric worldviews, standing alone, establish mental incompetence") (citing *Cheek v. United States*, 498 U.S. 192, 195-96 (1991)). And neither Ohio nor federal law required the state judge to order *sua sponte* such an examination on the record before him. *See, e.g.*, *State v. Spivey*, 81 Ohio St. 3d 405, 692 N.E.2d 151, 157 (1998); *State v. Berry*, 72 Ohio St. 3d 354, 650 N.E. 2d 433, 438-39 (1995); *State v. Monroe*, 105 Ohio St. 3d 384, 827 N.E. 2d 285, 303 (2005); *Tucci-Jarraf*, 939 F.3d at 795 ("[m]ental incompetence is a 'high' bar to clear") (quoting *United States v. Miller*, 531 F.3d 340, 350 (6th Cir. 2008)). *See also United States v. Hood*, 827 F. App'x 524, 528-29 (6th Cir. 2020) ("[w]e also grant a trial court great deference in

32

its assessment of a defendant's competence") (citing *United States v. Stafford*, 782 F.3d 786, 791 (6th Cir. 2015)).

Considering the record before the Court, there is no basis to find that the Ohio Court of Appeal's decision was either incorrect as a matter of law or an unreasonable determination of the facts in light of the record. Accordingly, I recommend that Tucker's Ground One claim be dismissed for lack of merit.

### B. Ground Two

I also recommend that Tucker's Ground Two claim be dismissed for lack of merit. In his Ground Two claim, Tucker alleges that his 14th Amendment due process rights were violated "when the trial court allowed him to proceed pro se without a knowing and intelligent waiver of counsel." (ECF Doc. 1, PageID#15). Citing to established Supreme Court federal law on the issue such as *Faretta v. California*, 422 U.S. 806 (1975) and *United States v. Ross*, 703 F.3d 856, 867 (6th Cir. 2013), Tucker asserts that the Ohio Court of Appeals unreasonably applied federal law in finding that the trial court did not err in determining that Tucker provided knowing and intelligent waiver of counsel. (ECF Doc. 1, Page ID#14-15).

The Ohio Court of Appeals stated the following on this issue:

{¶10} Mr. Tucker's first assignment of error is that the trial court erred by allowing him to proceed pro se because he did not knowingly, intelligently, and voluntarily waive his right to counsel. We do not agree.

{¶11} The Sixth Amendment guarantees criminal defendants not only the right to counsel, but also the right to elect self-representation instead. *State v. Gibson*, 45 Ohio St.2d 366 (1976), paragraph one of the syllabus. As Crim.R. 44(A) explains:

Where a defendant charged with a serious offense is unable to obtain counsel, counsel shall be assigned to represent him at every stage of the proceedings from his initial appearance before a court through appeal as of right, unless the defendant, after being fully advised of his right to assigned counsel, knowingly, intelligently, and voluntarily waives his right to counsel.

There is no formula or script that a trial court must follow in every case in order to comport with the requirements of the Sixth Amendment. *State v. Schleiger*, 141 Ohio.St.3d 67, 2014-Ohio3970, ¶ 19, quoting *Iowa v. Tovar*, 541 U.S. 77, 88 (2004). A waiver of counsel is intelligent, for example, when a defendant "knows what he is doing and his choice is made with eyes open." *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942).

**{¶12}** When a defendant waives the right to be represented by counsel, the trial court must substantially comply with Crim.R. 44(A) "by making a sufficient inquiry to determine whether the defendant fully understood and intelligently relinquished his or her right to counsel." *State v. Martin*, 103 Ohio St.3d 385, 2004-Ohio-5471, ¶ 39, citing *Gibson* at paragraph two of the syllabus. "[A]n inquiry as to the dangers of self-representation 'must be made, even when the defendant is seemingly engaging in delay tactics, because such a delaying strategy by the defendant is often employed where the defendant does not understand the crucial role of counsel in criminal cases.'" *State v. Weiss*, 92 Ohio App.3d 681, 685 (9th Dist.1993). Noting that this Court looks to the totality of the circumstances surrounding a waiver of the right to counsel, we have recently summarized our review as follows:

> "While no one factor is dispositive, the trial court should consider whether the defendant was advised of the nature of the charges and the range of allowable punishments, and, in addition, may consider whether the trial court advised the defendant of the possible defenses to the charges and applicable mitigating circumstances." *State v. Trikilis*, 9th Dist. Medina Nos. 04CA0096-M, 04CA0097-M, 2005-Ohio-4266, ¶ 13. The trial court, however, does not need to "undertake pseudo-legal representation of a defendant by specifically advising him of possible viable defenses or mitigating circumstances," and, instead "a broader discussion of defenses and mitigating circumstances as applicable to the pending charges is sufficient." *State v. Ragle*, 9th Dist. Summit No. 22137, 2005- Ohio-590, ¶ 12; *Trikilis* at ¶ 13. "A court may also consider various other factors, including the defendant's age, education, and legal experience." *Trikilis* at ¶ 13.

*State v. Bloodworth*, 9th Dist. Summit No. 26346, 2013-Ohio-248, ¶ 12. *See also State v. Herrington*, 9th Dist. Summit No. 25150, 2010-Ohio-6455, ¶ 34.

**{¶13}** We must acknowledge from the outset that this case does not present a textbook example of the colloquy between a trial court and defendant on the waiver of counsel. Indeed, as one court has recognized in similar circumstances, cases discussing waiver of counsel and self-representation "presuppose[] a cooperative defendant willing to engage in reciprocal dialogue with the court" rather than "an uncooperative defendant [who] has refused to accept appointed counsel or engage

in a colloquy with the court." *United States v. Garey*, 540 F.3d 1253, 1263 (11th Cir.2008). Another court has observed that adherents to Mr. Tucker's political ideology often frustrate the efforts of trial court judges in this regard:

> On the matter of legal representation, the defendant will often refuse to cooperate with, or even speak to, his appointed counsel and will sometimes protest that he never authorized appointment of counsel. Yet, when the Court attempts to engage the defendant to determine whether the latter wants new counsel or wants to represent himself, the non-responsive dialogue begins, with the defendant refusing to affirmatively indicate his waiver of counsel or to answer in any coherent way as to how he wishes to proceed.

*United States v. Perkins*, N.D.Ga. No. 1:10-cr-97-1-JEC-LTW, 2013 WL 3820716, *2 (July 23, 2013).

{¶14} In this case, Mr. Tucker repeatedly frustrated the court's attempt to engage him in a dialogue about his waiver by refusing to answer questions, posing objections to the legitimacy of the court and the proceedings, and demanding the trial court's oath of office. Nonetheless, the record demonstrates that the trial court engaged in a colloquy that was appropriate given the totality of the circumstances, and Mr. Tucker, although obstinate, knowingly, voluntarily, and intelligently waived the right to counsel.

{¶15} The trial court substantially complied with Crim.R. 44(A), persisting in its inquiry about the right to counsel over three separate court dates and despite Mr. Tucker's attempts to sidetrack the discussion. The trial court candidly expressed concern about Mr. Tucker's ability to represent himself at trial, but pursued a line of questioning consistent with its obligation to assess Mr. Tucker's waiver:

> In the past, sir, I have asked you a series of questions to determine whether you are capable and qualified to represent yourself in this case, these cases. And, although you've in the past indicated to me a lack of sufficient education and training to be competent at representing yourself, that doesn't preclude you from being able to do so.
>
> I still want to raise those issues with you again, because each time we confront this issue, I keep on hoping and praying that you will snap out of it. You can either snap out of it before you start serving more time in prison or continue the process that you've been following for the last nine months that led you directly into a 20-some-year prison sentence.
>
> My guess is that at some time or another at the institution you're going to realize you've been making a lot of mistakes. But the fact

35

> of the matter is, in order for me to at least satisfy my statutory responsibilities, I have to ask you some questions about your education, training, and experience to determine whether you are truly capable of representing yourself in these matters.

The trial court then inquired whether Mr. Tucker understood that he had the right to counsel, attempted to identify areas in which Mr. Tucker had unanswered questions, and summarized the difficulties that a pro se individual may encounter at trial. The trial court informed Mr. Tucker that he would be required to comply with the rules of evidence and procedure applicable to attorneys; that as judge, he could not offer assistance during trial; that he would not interrupt the trial if Mr. Tucker became confused; that the right to represent himself could be revoked; and that disruptive defendants could be removed from the courtroom. The trial court also explained the potential prison sentence that Mr. Tucker faced.

{¶16} Throughout the trial court's inquiry, Mr. Tucker persisted in a course of evasion and delay. Nonetheless, our review of the record leads us to conclude that Mr. Tucker engaged the trial court and participated in the proceedings in a manner that is sufficient to demonstrate that he knowingly, intelligently, and voluntarily waived the right to counsel. Mr. Tucker resolutely insisted that he wanted to proceed without an attorney, and although he told the trial court that he did not want to answer any questions, he participated in the pretrial proceedings by opposing two motions and prevailing on one of them. At a later date, Mr. Tucker affirmed that he understood he could retain his own attorney, read from the Sixth Amendment, and moved to dismiss the charges against him. When the trial court inquired further, Mr. Tucker asserted the right to counsel, specified that he would prefer not to work with two particular attorneys, and consented to a continuance.

{¶17} During his third pretrial appearance, Mr. Tucker asked to proceed without counsel, citing differences with his attorney. Although those differences appear to have been related to Mr. Tucker's political views, it is apparent from the record that the disagreement was real and that Mr. Tucker was adamant in his decision. Mr. Tucker stated that he understood what he was doing. When the trial court stated, "I'm just trying to make sure that you have complete knowledge and information about the potential consequences * * * of trying this case and losing," Mr. Tucker replied, "Well, obviously, I do if I don't want this man to represent me." Mr. Tucker questioned the knowledge and experience of his appointed attorney, and he affirmed that he was self-educated in the law. After the trial court informed him about how trial would proceed, Mr. Tucker reaffirmed his desire to represent himself.

{¶18} On the record before us, we conclude that the trial court substantially complied with Crim.R. 44(A) and that Mr. Tucker knowingly, voluntarily, and intelligently waived his right to counsel. Mr. Tucker's first assignment of error is overruled.

*State v. Tucker*, 2016-Ohio-1353, 62 N.E.3d 903 (9th Dist.), ¶¶10-18.

First, I find that the Ohio Court of Appeals cited the correct federal standard. Specifically, the appellate court cited *State v. Gibson*, 45 Ohio St.2d 366, 345 N.E.2d 399 (1976). The *Gibson* court evaluated a claim that a defendant's Sixth Amendment rights were violated when a trial judge permitted the defendant to waive counsel representation and instead defend himself. *Id.* at 368. In *Gibson*, the court adopted and applied the Supreme Court's decision in *Faretta* in finding that the defendant had "an independent constitutional right of self-representation and that he may proceed to defend himself without counsel when he knowingly, voluntarily and intelligently elects to do so." *Id.* at 377-378. *Gibson* also cited several U.S. Supreme Court cases which recognized a defendant's Sixth Amendment right to counsel representation. In doing so, the Ohio Supreme Court favorably adopted the standard for determining the validity of counsel waiver enunciated in *Von Moltke v. Gillies*, 322 U.S. 708, 723 (1948). Specifically, for a waiver to be valid, it has to be made with an "apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter." *Gibson*, 45 Ohio St.2d at 377. Thus, the issue in both the trial court and the Ohio Court of Appeals was a factual determination regarding whether Tucker's decision to waive representation by counsel and represent himself was knowing, voluntary and intelligent.

The Ohio Court of Appeals' decision to reject Tucker's Ground Two claim was not an unreasonable determination of the facts under § 2254(d)(2). And its holding that Tucker made a knowing, voluntary, and intelligent waiver of his right to counsel is therefore

entitled to AEDPA deference. Tucker asserts two reasons why his waiver of counsel was not knowing and intelligent: (1) he was mentally incompetent and (2) his reasons for waiving counsel and proceeding pro se were not intelligent. (ECF Doc. 1, PageID#16). Specifically, Tucker states that he did not express any substantive concern about his appointed counsel's ability or competence to represent Tucker and provide a formidable defense. Instead, Tucker alleges that his concern was that Nehr wanted Tucker to be a ward of the state. And Tucker further points to statements he made at his pretrial hearing where he stated that he was only at the court to protect his investment and to "deduct business." (ECF Doc. 1, Page ID#16). Yet, absent some connection between Tucker's espousal of his views and his ability to make a valid waiver, the mere articulation of such unusual views is insufficient to undermine a waiver's validity because it does not necessitate a finding that a defendant is not making his choice with "eyes open." *See Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942). Thus, we must determine whether the record demonstrates that Tucker's beliefs indicated more than just adherence to unusual views and instead shows a threat to the validity of Tucker's waiver.

The Ohio Court of Appeals' decision was not contrary to, or an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Although resistant to answering the trial court's questions, Tucker did engage in a colloquy with the trial judge. The trial court advised him of his right to appointed counsel, the benefits of legal representation, and the consequences of proceeding pro se. (ECF Doc. 14-2, PageID#615-17,620-21). During this colloquy, Tucker stated his position—even if misguided—on what jurisdiction he believed the trial court had over his crimes. (ECF Doc. 14-2, PageID#618-19). The trial judge once again advised Tucker that he did not think that

Tucker should represent himself and explained the potential consequences of proceeding pro se. (ECF Doc. 14-2, PageID#620). Yet, Tucker asserted that it was his desire to no longer have Attorney Nehr as his appointed counsel. (ECF Doc. 14-2, PageID#622). Considering the totality of circumstances, it appears from the record that Tucker did provide a knowing and intelligent waiver of counsel. Because the state appellate court's decision was not contrary to, or an unreasonable application of, clearly established law or based on an unreasonable determination of the facts in light of the evidence presented in the state court, I recommend that Tucker's Ground One claim be dismissed for lack of merit.

### C.  Ground Three

Finally, I recommend that Tucker's Ground Three claim be denied because it lacks merit. A sentence is unconstitutionally vindictive if it imposes greater punishment because the defendant exercised a constitutional right, such as the right to jury trial or the right to appeal. *See Wasman v. United States*, 468 U.S. 559, 568 (1984); *North Carolina v. Pearce*, 395 U.S. 711 (1969). Because the Supreme Court determined that fear of vindictiveness after prevailing on an appeal may unconstitutionally deter a defendant's exercise of the right to appeal, the Court designed a prophylactic presumption: "[W]henever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear." *Pearce*, 395 U.S. at 726.

Although *Pearce* itself announced "a rule of sweeping dimension," the Supreme Court subsequently clarified that the presumption of vindictiveness "do[es] not apply in every case where a convicted defendant receives a higher sentence" on remand. *See Alabama v. Smith*, 490 U.S. 794, 799 (1989) (quoting *Texas v. McCullough*, 475 U.S. 134,

138 (1986). Instead, the Supreme Court applies the presumption only where there is a "reasonable likelihood" that the increased sentence is the product of "actual vindictiveness" on the part of the sentencing judge. *Smith*, 490 U.S. at 799-800. If there is no such reasonable likelihood, "the burden remains upon the defendant to prove actual vindictiveness." *Id.* at 799-800 (citing *Wasman*, 468 U.S. 559, 569 (1984)).

Generally, the presumption of vindictiveness does not apply when the second sentencing authority is a different entity than the original sentencing authority. *McCullough*, 475 U.S. at 140; *Goodell v. Williams*, 643 F.3d 490, 500-01 (6th Cir. 2011) (holding that the presumption of vindictiveness does not apply when varying sentences are imposed by two different judges). "In such circumstances, a sentence 'increase' cannot truly be said to have taken place." *McCullough*, 475 U.S. at 140.

Despite this general rule that if a different judge increases the first judge's sentence on remand a presumption of vindictiveness does not attach, a presumption of vindictiveness may still be appropriate "where the circumstances of the particular case give rise to a *need* to guard against vindictiveness." *Goodell*, 643 F, 3d at 498 (emphasis in original). However, so long as the second sentencing court provides "an on-the-record wholly logical, nonvindictive reason for the [increased] sentence," the presumption will not apply. *McCullough*, 475 U.S. at 140.

In this case, there were two different judges at Tucker's first and second sentencing—Judge Mark A. Betleski sentenced Tucker and Judge James L. Miraldi resentenced Tucker. (ECF Doc. 14-2, PageID#451; ECF Doc. 14-2, PageID#985). Accordingly, a presumption of vindictiveness does not apply unless other circumstances evidence a need to protect against vindictive conduct. Tucker asserts that the presumption

40

of vindictiveness applies because the trial judge: (1) did not base his resentencing decision on any information independent of the evidence in trial and Tucker's allegedly irrational conduct; (2) did not specify any conduct by Tucker to justify the increase; and (3) "baldly recited Ohio Revised Code sentencing factors verbatim" without linking those factors to any particular facts. (ECF Doc. 1, PageID#17).

Here, Tucker has not presented any circumstances that indicate a "taint of retaliation and vindictiveness" as he alleges. (ECF Doc. 1, PageID#17). At the resentencing hearing, the second trial court judge indicated that he did not review the previous judge's sentencing entries or his sentencing notes. (ECF Doc. 14-2, PageID#989). Instead, the resentencing court read the complete trial transcripts of the two cases but did not review the transcripts that pertained to Tucker's sentencings in either case. (ECF Doc. 14-2, PageID#989; ECF Doc. 14-1, PageID#360). The resentencing court noted that he was mindful that principles and purposes of sentencing are designed to properly punish the defendant and protect the public. (ECF Doc. 14-2, PageID#1015). Further, he noted that society "has systemic problems with many of our youth today and a drug culture that is run rampant and is poisoning our communities, not just Lorain County, but elsewhere." (ECF Doc. 14-2, PageID#1015).

The resentencing court stated that he considered the seriousness factors and did not find any of them less serious. (ECF Doc. 14-2, PageID#1015). He indicated he found factors that pertained to recidivism and no factors that made recidivism less likely. (ECF Doc. 14-2, PageID#1015). He even discusses Tucker's beliefs, noting that he wished "[he] could change the unfairness that leads to the creation of people who think the way [Tucker] apparently thinks" from what he observed from reading the records of both cases. (ECF

41

Doc. 14-2, PageID#1015-16). Nevertheless, he stated that his job was to "properly punish [Tucker] and protect the public." (ECF Doc. 14-2, PageID#1016). Thus, upon review of the record, it appears that the resentencing court provided some logical, non-vindictive reasoning for the increased sentence, even if it was not as detailed as Tucker would have liked. Accordingly, the presumption should be disregarded.

Absent the *Pearce* presumption, Tucker bore the affirmative burden to establish that the second sentencing authority exercised "actual vindictiveness" during resentencing. *Smith*, 490 U.S. at 799. The resentencing judge expressed no anger toward Tucker for his successful appeal. As stated above, the resentencing judge reviewed the record and did not consider the transcripts from the sentencing portions of both cases. Moreover, the resentencing judge provided some non-vindictive rationale for his decision. Accordingly, Tucker has not met his burden in demonstrating that the resentencing judge acted vindictively as a punishment for Tucker's successful appeal. Therefore, I recommend that Tucker's Ground Three claim be denied for lack of merit.

## IX.    CERTIFICATE OF APPEALABILITY RECOMMENDATION

### A.  Legal Standard

As amended by AEDPA, 28 U.S.C. § 2253(c)(1) provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for

establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "[a] 'substantial showing' requires the applicant to 'demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further.'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996)). The statute requires that certificates of appealability specify which issues are appealable. 28 U.S.C. § 2253(c)(3).

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. "If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." *Id.*; *see also* 28 U.S.C. § 2253(c)(3) ("The certificate of appealability under [§ 2253(c)(1)] shall indicate which specific issue or issues satisfy the showing required by [§ 2253(c)(2)]."). In light of the Rule 11 requirement that the court either grant or deny the certificate of appealability at the time of its final adverse order, a recommendation regarding the certificate of appealability issue is included here.

### B. Analysis

If the Court accepts my recommendations, Tucker will not be able to show that the court's rulings on his claims are debatable among jurists of reasons. Tucker's Ground One, Ground Two, and Ground Three Claims are barred by the AEDPA statute of limitations. Alternatively, Tucker's Ground One, Ground Two, and Ground Three claims are procedurally defaulted and/or meritless. Because jurists of reasons would not find any of these conclusions to be debatable, I recommend that no COA issue in this case.

## X.     RECOMMENDATION

Because all of Tucker's claims are barred by the AEDPA statute of limitations, I recommend

that Tucker's claims be DISMISSED and that his petition for a writ of habeas corpus be DENIED.

In addition, I recommend that all of Tucker's claims be DISMISSED because they are procedurally

defaulted and/or meritless. I further recommend that Tucker not be granted a COA.


Dated: September 30, 2022

_s/ Jennifer Dowdell Armstrong_
Jennifer Dowdell Armstrong
United States Magistrate Judge


## XI.     NOTICE TO PARTIES REGARDING OBJECTIONS

Local Rule 72.3(b) of this Court provides:

**Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

*Id.* (emphasis added).

Failure to file objections within the specified time may forfeit the right to appeal the

District Court's order. *Berkshire v. Beauvais*, 928 F.3d 520, 530-531 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).